Matter of Imrie v Lyon (2018 NY Slip Op 01230)





Matter of Imrie v Lyon


2018 NY Slip Op 01230


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

524256

[*1]In the Matter of JENNIFER L. IMRIE, Respondent,
v
CHRISTOPHER LYON, Appellant. (And Another Related Proceeding.)

Calendar Date: January 16, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Rumsey, JJ.


McNamee, Lochner, Titus & Williams, PC, Albany (Bruce J. Wagner of counsel), for appellant.
E. Stewart Jones Hacker Murphy, LLP, Troy (James C. Knox of counsel), for respondent.
Daniel J. Mannix, Glens Falls, attorney for the child.




MEMORANDUM AND ORDER
Clark
, J.
Appeal from an order of the Family Court of Warren County (Wait, J.), entered September 6, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of one child (born in 2003). A judgment of divorce between the mother and the father was entered in January 2009. The judgment of divorce
incorporated a prior separation agreement, which provided that the parties "shall share joint legal and physical custody of said child with the exact days and times to be mutually agreed to by the parties." Consistent with that agreement, the father and the mother decided that the child would live with the mother Monday through Friday afternoon and live with the father Friday afternoon through Monday morning.
In February 2015, the mother filed a petition to modify the prior custodial arrangement, seeking primary physical custody and continued joint legal custody because the father moved from the City of Glens Falls, Warren County — where the mother and child live — to the City of [*2]Albany, and he attempted to enroll the child in Albany Academy without consulting her. Thereafter, the father cross-petitioned for modification of the custodial arrangement, seeking physical custody and exclusive educational decision-making authority, as the parties disagreed on whether the child should attend Albany Academy. Family Court directed a psychological evaluation of the parties, the child and other persons deemed appropriate by the evaluator. Following the completion of that evaluation, fact-finding hearings were held on the modification petitions. At the conclusion of those hearings, Family Court found that a change in circumstances had occurred warranting an examination of the custodial arrangement that would serve the best interests of the child. Finding that an award of primary physical custody and educational decision-making authority to the mother would be in the best interests of the child, Family Court granted the mother's petition and dismissed the father's cross petition. The father now appeals.
We affirm. As an initial matter, the parties do not take issue with Family Court's finding that a change in circumstances existed (see Matter of Nathanael G. v Cezniea I., 151 AD3d 1226, 1227 [2017]; Matter of Paul LL. v Tanya LL., 149 AD3d 1173, 1174 [2017]). In any event, the record evidence demonstrates that the father's move to Albany, in addition to the parties' deteriorating communication and lack of agreement concerning where the child would live and continue his education, supports Family Court's finding that a change in circumstances had occurred warranting a best interests analysis (see Matter of Cornick v Floreno, 130 AD3d 1170, 1171 [2015]; Matter of Gravelding v Loper, 42 AD3d 740, 741-742 [2007]; Matter of Robertson v Robertson, 40 AD3d 1219, 1220 [2007]; compare Matter of William O. v John A., 151 AD3d 1203, 1204-1205 [2017], lv denied 30 NY3d 902 [2017]).
Factors relevant to determining whether a modification will serve the child's best interests include "the home environment of each parent, the relative fitness of the parents, the parents' past performance and ability to provide for the child['s] overall well-being, how faithful each party has been to prior court orders, the child['s] wishes and the willingness of each parent to foster a positive relationship between the children and the other parent" (Matter of Nathanael G. v Cezniea I., 151 AD3d at 1227; see Matter of Montoya v Davis, 156 AD3d 132, 135 [2017]; Matter of Rosenkrans v Rosenkrans, 154 AD3d 1123, 1124 [2017]). Inasmuch as Family Court is in a superior position to assess witness credibility, its factual findings are to be accorded great deference, and its decision will not be disturbed if supported by a sound and substantial basis in the record (see Matter of Southammavong v Sisen, 141 AD3d 905, 906 [2016]; Matter of Gentile v Warner, 140 AD3d 1481, 1482 [2016]).
At the fact-finding hearing, the mother testified that the father moved to Albany in September 2014 and had applied for the child's admission to Albany Academy without her knowledge. Up until that point in time, the parents' relationship was amicable, and they shared custody as well as parenting responsibilities and time. In contrast to Albany where the child does not have a network of family support (compare Matter of Barner v Hampton, 132 AD3d 1098, 1099-1100 [2015]), several of the mother's relatives, including her sister and mother, are actively involved in the child's life by regularly visiting the child, assisting him with his homework and providing him with transportation to hockey practice when needed. Regarding the child's education, the mother indicated that, given the child's learning disability and diagnosis of attention deficit hyperactivity disorder, the child requires an individualized education plan (hereinafter IEP), under which he receives extra academic assistance and accommodations. The mother maintains regular contact with the child's teachers and assists the child with his homework each night when she has custody of the child. Although both parents regularly participate in the annual review process for the child's IEP, the father expressed concern with the child's need for an IEP and disagreement with the child's diagnosis of attention deficit [*3]hyperactivity disorder and a learning disability [FN1]. Although Albany Academy would provide the child with an ice hockey program commensurate with his interest in, and aptitude for, the sport, a school counselor at Albany Academy testified that, contrary to the father's representation, the child had not been accepted to Albany Academy and that the school would not be able to provide the child with a modified curriculum or special education services to meet his educational needs. The mother opposed placement of the child at Albany Academy because the school would not be able to provide the child with special education services or an individual aide to assist him. The father's testimony varied from that of the mother in several material respects, and Family Court found that the father "simply lacked credibility." According due deference to Family Court's assessment of the foregoing evidence presented at the fact-finding hearing, as well as the credibility of witnesses, we find that a sound and substantial basis exists in the record to support Family Court's determination to award the mother primary physical custody of the child and authority to make all educational decisions for the child as indicated in Family Court's order (see Matter of Southammavong v Sisen, 141 AD3d at 906; Matter of Noel v LePage, 133 AD3d 1129, 1130-1131 [2015], lv denied 27 NY3d 902 [2016]; Matter of Gates v Petosa, 125 AD3d 1161, 1163 [2015]; compare Matter of Tropea v Tropea, 87 NY2d 727, 739-742 [1996]; Matter of Sean Q. v Sarah Q., 156 AD3d 1173, 1174-1175 [2017]).
Further, we find no error with Family Court's rejection of the recommendation reached by the court-appointed psychologist in her report. Notwithstanding the position taken by the psychologist that the father should be awarded primary physical custody of the child, "the recommendations of court-appointed experts are but one factor to be considered and, although entitled to some weight, such recommendations are not determinative and should not usurp the trial court's independent impressions of the evidence and conclusions drawn from that evidence" (Matter of Montoya v Davis, 156 AD3d at 138 [internal quotation marks, brackets and citation omitted]; see Baker v Baker, 66 AD3d 722, 723 [2009], lv dismissed 13 NY3d 926 [2010]). Family Court found that the psychologist's impressions were at odds with, and did not have the benefit of, the testimony presented at the fact-finding hearing in that the psychologist did not account for the father's shortcomings regarding his understanding of the child's educational and emotional needs or his misleading representation that the child had been accepted for admission into Albany Academy. Accordingly, "[a]lthough psychological evaluations . . . can provide valuable assistance to the court in its decision-making process, Family Court is certainly empowered to reach a decision contrary to the[] positions [recommended in those evaluations] based on its evaluation of all the evidence" (Matter of Engwer v Engwer, 307 AD2d 504, 505 [2003] [internal citation omitted]), and we discern no abuse of that authority here, given the record evidence.
With regard to the father's claim that Family Court's best interests analysis is flawed due to its failure to conduct a Lincoln hearing, this issue is unpreserved given the absence of any request that Family Court do so (see Matter of Gallo v Gallo, 138 AD3d 1189, 1191 [2016]; Matter of Colleen GG. v Richard HH., 135 AD3d 1005, 1009 [2016]). In any event, we reject the father's contention that Family Court's best interests analysis is infirm for failing to conduct a Lincoln hearing. Although a Lincoln hearing is often a preferred method of ascertaining a child's wishes, here, the court was aware of the child's wishes, which were communicated to the psychologist who conducted the psychological evaluation and which were reflected in her report [*4](see Matter of Newman v Doolittle, 151 AD3d 1233, 1235 [2017]; Matter of Battin v Battin, 130 AD3d 1265, 1266 [2015]; compare Matter of Jessica B. v Robert B., 104 AD3d 1077, 1078 [2013]). Moreover, while the child's wishes are some indication of what is in his or her best interests and "are entitled to great weight" (Matter of Coull v Rottman, 131 AD3d 964, 964 [2015], lv denied 26 NY3d 914 [2015]; see Matter of Oyefeso v Sully, 148 AD3d 710, 712 [2017]; Gizzi v Gizzi, 136 AD3d 1405, 1406 [2016]; Melissa C.D. v Rene I.D., 117 AD3d 407, 408 [2014]), those expressed wishes are only one factor to be considered and do not dictate a certain result in the best interests calculus (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Matter of Pierce v Pierce, 151 AD3d 1610, 1610-1611 [2017], lv denied 30 NY3d 902 [2017]; Matter of Rivera v LaSalle, 84 AD3d 1436, 1438 [2011]; Koppenhoefer v Koppenhoefer, 159 AD2d 113, 116-117 [1990]). Finally, based upon the parties' representation that the child is currently attending a public school, we need not address the father's contention concerning the payment of educational expenses for high school (compare Matter of Overbaugh v Schettini, 103 AD3d 972, 974-975 [2013], lv denied 21 NY3d 854 [2013]; Matter of Wen v Wen, 304 AD2d 897, 898 [2003]). The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
McCarthy, J.P., Lynch, Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Despite the father's views expressed at the hearing, the record does not reflect that the father has made any attempt to challenge the committee on special education's classification of the child (see generally 8 NYCRR 200.5).